# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                              No. CR 17-1923 RB

JOHN LEROY MILNE and

MANUEL PAVON-RODRIGUEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

The government intends to try Defendants Manuel Pavon-Rodriguez and John Leroy Milne together for crimes involving marijuana. Presuming that Mr. Milne will not testify at trial, Mr. Pavon-Rodriguez argues that the Sixth Amendment's Confrontation Clause compels the Court to either sever the trial or exclude any reference to out-of-court statements that Mr. Milne made to law enforcement. For the reasons detailed below, the Court declines to sever the trial.

After considering the law and the nine numbered statements detailed in the Facts section, the Court determines that Statements 1–4 and 8 will be admissible with no limiting instruction so long as those statements are not used to prove the truth of the matter asserted. Statements 5 and 6 are admissible with a proper instruction telling the jury to only consider those statements with regard to Mr. Milne. Statements 7 and 9 must be excluded unless Mr. Milne testifies at trial.

## FACTS

Highway 80 originates in the border town of Douglas, Arizona, and runs north until it merges into Interstate 10 in New Mexico. (Doc. 72 at 2.) There are no Border Patrol checkpoints

from Highway 80's origin in Douglas up to Interstate 10. (*Id.*) For that reason, Highway 80 is a popular route for smugglers of contraband. (*Id.*)

On the morning of June 23, 2017, Matthew Defayette, an agent with the United States Border Patrol, saw a brown, four-door Ford Explorer with tinted windows heading north on Highway 80. (*Id.* at 3.) Agent Defayette did not recognize the Explorer as a local vehicle, nor could Agent Defayette see a license plate on the Explorer. (*Id.*) His interest piqued, Agent Defayette decided to follow the Explorer. (*See id.*)

After about 1.5–2 miles, the Explorer pulled into the parking lot of the Rodeo Tavern in Rodeo, New Mexico. (*Id.*) Agent Defayette also pulled into the parking lot. (*See id.* at 4.) A man, Defendant John Leroy Milne, emerged from the Explorer and approached Agent Defayette's vehicle. (*See id.*) Agent Defayette exited his vehicle and spoke with Mr. Milne. (*See id.*) A short while into their conversation, Border Patrol agents Roger Evan Jay, Jr. and Rene Rocha joined Agent Defayette and Mr. Milne. (*Id.* at 6.) At the end of the interaction, the Border Patrol agents arrested Mr. Milne. (*Id.* at 7.) They discovered that the Explorer was carrying several burlap backpacks filled with about 111.8 kilograms of marijuana. (*Id.*) They also discovered a man hiding in the Explorer, Defendant Manuel Pavon-Rodriguez, whom they arrested. (*See id.*)

This opinion focuses on the nine statements that Mr. Milne made to the Border Patrol agents during their interaction that day:

<u>Statement 1</u>: Agent Defayette asked Mr. Milne if everything was okay, and Mr. Milne stated that he was okay, and that he was stopping at the Rodeo Tavern for a drink. (*See* Doc. 59 at 1.)

<u>Statement 2</u>: Agent Defayette asked Mr. Milne about his itinerary, and Mr. Milne stated that he was going from Benson, Arizona, to Phoenix, Arizona. (*See id.*)

2

Statement 3: Agent Defayette asked Mr. Milne what he was doing in the area, and Mr. Milne answered that he was looking for work. (*See id.* at 2.)

Statement 4: Agent Defayette asked Mr. Milne if there was anything illegal or anyone else in the Explorer, to which Mr. Milne answered, "No." (*See id.*)

Statement 5: Agent Defayette asked Mr. Milne if he had any identification, and Mr. Milne responded that he did not have identification, but that his name was "John Milne," with a date of birth of "September 29, 1961." (*See id.*)

Statement 6: After telling Agent Jay that there was a temporary Arizona license sticker attached to the back of the Explorer, Mr. Milne said that he would retrieve the sticker for the agents. (*See id.*)

Statement 7: As Mr. Milne was grabbing the temporary sticker, the agents saw burlap backpacks in the cargo area of the Explorer. Asked what was in the backpacks, Mr. Milne answered, "bales." (*See id.*)

Statement 8: When Agent Defayette asked Mr. Milne, "bales of what," Mr. Milne said that he did not know. (*See id.*)

Statement 9: Mr. Milne was asked again if someone else was inside the Explorer, and Mr. Milne responded that there was a person lying down in the backseat. (*See id.*)

The government has charged both Mr. Milne and Mr. Pavon-Rodriguez with conspiracy to distribute marijuana and possession with intent to distribute marijuana. The government intends to try both defendants at a single trial. Mr. Pavon-Rodriguez protests this arrangement, pointing out that he is entitled under the Confrontation Clause of the Sixth Amendment to confront any witness who makes statements against him. (*See* Doc. 51 at 2.) Since the nine statements above were made by Mr. Milne, who may not testify, Mr. Pavon-Rodriguez will not

be able to confront Mr. Milne about those statements. (*See* Doc. 51 at 1.) To vindicate his Sixth Amendment rights, Mr. Pavon-Rodriguez asks the Court to either sever the trial for the two defendants or exclude the above statements by Mr. Milne. (*See id.*)

**LEGAL STANDARD**

*I.     The Confrontation Clause of the Sixth Amendment*

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. After examining the history behind the Sixth Amendment, the Supreme Court in *Crawford v. Washington* explained that the Confrontation Clause protects a defendant's right to confront those who bear testimony against him. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). It does this by barring a witness's testimony against a defendant unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity to cross-examine the witness. *See id.* at 68.

The Court in *Crawford* did not specify the type of witness testimony that would fall under the Confrontation Clause, but it did say that, at a minimum, the Confrontation Clause covered prior testimony at a preliminary hearing, before a grand jury, or at a former trial," as well as prior testimony given at "police interrogations." *See id.* The Tenth Circuit in *United States v. Smalls* tried to determine with more precision the type of testimony covered by the Confrontation Clause, defining "testimonial" statements covered by the Clause as either (1) "a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution" or (2) a formal statement such that "a reasonable person in the position of the declarant would objectively foresee that the primary

4

purpose of the statement was for use in the investigation or prosecution of a crime." *See United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010). Only if the statements in question qualify as "testimonial" under the above definitions does the statement implicate the Confrontation Clause.

Even if the statements are "testimonial," the prosecution may sometimes still use the statements against a defendant who never had the opportunity to cross-examine the speaker. As the Supreme Court explained in *Crawford*, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *See Crawford*, 541 U.S. at 59 n.9. Synthesizing the law thus far, the prosecution may not use a "testimonial" statement made by an out-of-court speaker for the truth of the matter asserted against a defendant unless (1) the speaker testifies at trial or (2) the defendant previously had an opportunity to cross-examine the speaker, and the speaker is unavailable.

## II. *The Confrontation Clause and Joint Trials*

In the special context of joint trials, there are still more rules governing the application of the Confrontation Clause. Courts have long noted that joint trials, where the prosecution tries more than one defendant at a time, pose a unique situation when the prosecution seeks to admit a statement made by a non-testifying defendant. *See, e.g., Crawford*, 541 U.S. at 59 (noting that there is an "entirely different question" under the Confrontation Clause when considering a statement made by a codefendant), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314 n.4 (2009) (same). In that context, the statement is freely admissible under the Sixth Amendment against the defendant who made the statement, but the Sixth Amendment prevents the admission of the statement against any codefendant. *See United States v. Shaw*, 758 F.3d 1187, 1196 (10th Cir. 2014).

Aware that confessions (statements made by a defendant) and joint trials are vital to the justice system, the Supreme Court refused to always force prosecutors seeking to admit a defendant's confession in a joint trial to either toss the confession or try the defendants separately. *See Richardson v. Marsh*, 481 U.S. 200, 209–11 (1987). Instead, the Supreme Court pointed out that "ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider the testimony only against a codefendant." *See id.* at 206. Since the Confrontation Clause only protects a defendant's right to confront those who bear testimony *against* him, *see Crawford*, 541 U.S. at 51 (emphasis added), a limiting instruction can sometimes cure the Confrontation Clause issue with a codefendant's confession in a joint trial. Based on the above principles, the *Richardson* Court held that confessions that are redacted to eliminate the defendant's name, as well as any reference to the defendant, will not violate the Confrontation Clause if there is a proper limiting instruction. *See Richardson*, 481 U.S. at 200.

The *Richardson* Court noted, however, that there were exceptions to the general assumption that juries follow the Court's instructions, and that there would be situations where a limiting instruction would not be enough. *See Richardson*, 481 U.S. at 207. Citing *Bruton v. United States*, 391 U.S. 123, 135–36 (1968), the *Richardson* Court acknowledged that in certain contexts, the out-of-court statements of a codefendant could be so powerfully incriminating that it would overpower any limiting instruction, thus necessitating exclusion of the codefendant statements under the Confrontation Clause. *Richardson*, 481 U.S. at 207 (discussing *Bruton*, 391 U.S. at 135–36). The *Richardson* Court clarified that this "*Bruton* rule" is narrow and applicable only to situations where the incriminating testimony is so "vivid" and "difficult to thrust out of mind" that there exists an "overwhelming probability" that the jury cannot comply with an

instruction to ignore the incriminating testimony with regard to the defendant. *See id.* at 208. On the other hand, *Bruton* is inapplicable where the codefendant's statement did not "incriminate on its face," and became incriminating "only when linked with evidence introduced later at trial." *See id.* In that instance, the codefendant's statement is only inferentially incriminating, and "the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference" in the first place. *See id.*

In *Richardson*, Clarissa Marsh and Benjamin Williams were charged with murder, robbery, and assault. *Id.* at 202. There was a third person involved in the crime, Kareem Martin, but he was a fugitive at the time of the trial. *Id.* At Ms. Marsh and Mr. Williams's joint trial, the prosecution introduced a confession that Mr. Williams gave to the police shortly after his arrest. *Id.* at 203. The confession described, among other things, Mr. Williams's conversation with Mr. Martin (the fugitive) as they drove to the victim's home. *See id.* at 203–04. During that conversation, Mr. Martin said that "he would have to kill the victims after the robbery." *Id.* at 204. The confession redacted all reference to Mr. Williams's codefendant, Ms. Marsh—in fact, somebody who only listened to the confession would have thought that only Mr. Williams and Mr. Martin were in the car. *See id.* at 203–04. After the prosecution rested, Ms. Marsh took the stand and testified about, among other things, sitting in a car with Messrs. Williams and Martin as they drove to the victim's house. Only by putting Ms. Marsh's testimony together with the earlier confession could the jury infer that Ms. Marsh was in the car when Mr. Martin talked about killing the victims. Under these facts, the Supreme Court in *Richardson* distinguished the case from *Bruton* and held that, where "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence," the confession is only inferentially

incriminating and a proper limiting instruction would be effective in preventing a Confrontation Clause violation. *See id.* at 211.

After *Richardson* was decided, courts dealing with joint trials grappled with the question of whether a particular non-testifying codefendant's confession fell under *Richardson*, and was thus admissible in a joint trial with a limiting instruction, or whether the confession fell under *Bruton*, and was thus so incriminating that it would overwhelm any limiting instruction. Over a decade later, in *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court provided more clarity as to whether *Richardson* or *Bruton* applied to a particular confession.

In *Gray*, defendant Anthony Bell gave a confession to the Baltimore City Police in which he said that he, codefendant Kevin Gray, and Jacquin "Tank" Vanlandingham had severely beaten the victim, Stacey Williams, who later died. *See Gray*, 523 U.S. 185, 188 (1998). The State indicted Messrs. Bell and Gray and tried them jointly (the State did not indict Mr. Vanlandingham because he had passed away). *Id.* Over Mr. Gray's objection, the trial judge permitted the State to introduce a redacted version of Mr. Bell's confession into evidence. *Id.* When the police detective read the confession into evidence at trial, he said aloud the word "deleted" or "deletion" whenever Mr. Gray's or Mr. Vanlandingham's name appeared. *Id.* The judge instructed the jury that the confession was only evidence against Mr. Bell, and could not be used against Mr. Gray. *Id.* at 189. The jury convicted both defendants, and Mr. Gray appealed on Sixth Amendment grounds. *See id.*

In deciding whether *Bruton* or *Richardson* applied, the *Gray* Court conceded that *Richardson* placed outside the scope of the Confrontation Clause statements that "incriminate inferentially." *See id.* at 195. However, the *Gray* Court gathered that "inference pure and simple cannot make the critical difference." *Id.* at 195. If inference was the critical difference, the *Gray*

Court reasoned, the prosecution could circumvent the Confrontation Clause simply by replacing the defendant's name with an obvious reference to the defendant, like "the-other-person-sitting-at-the-table-who-shall-not-be-named." *See id.* Of central importance, according to the *Gray* Court, is the *kind* of inference required for incrimination: statements that "did not refer directly to the defendant . . . and which became incriminating 'only when linked with evidence introduced later at trial' " was the type of inference that did not have to be excluded under the Confrontation Clause. *See id.* at 196. On the other hand, inferences that "involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial" would be subject to exclusion under the Confrontation Clause. *See id.* Additionally, "facially incriminatory" statements—such as statements with prominent redactions—are also subject to exclusion under *Bruton* because they are "more vivid than inferential incrimination and . . . hence more difficult to thrust out of mind." *See id.*

Turning to the facts of their case, the *Gray* Court found it significant that, "unlike *Richardson*'s redacted confession, [Mr. Bell's confession] refers directly to the 'existence' of the nonconfessing defendant." *Id.* at 192. According to the *Gray* Court, the statements in the case often obviously refer to the defendant and involve incriminating inferences that a jury ordinarily could immediately make. *See id.* at 196. The prominent redactions also facially incriminated the defendant and made a vivid accusation that was difficult to expel from the juror's mind. *See id.* at 196. Under these circumstances, the *Gray* Court found that the facts more resembled *Bruton* than *Richardson*, and consequently a limiting instruction would not remedy the Confrontation Clause problem. *See id.* at 197.

9

The Tenth Circuit has adopted the Supreme Court's rulings in *Richardson* and *Gray*. *See United States v. Zar*, 790 F.3d 1036, 1052 (10th Cir. 2015). In *Zar* the Tenth Circuit held that the "Confrontation Clause is not violated as long as the court (1) redacts the non-testifying codefendant's confession to eliminate the defendant's name and any reference to her existence, and (2) gives a proper limiting instruction when it admits the confession." *Id.* (citing *Richardson*, 481 U.S. at 208, 211). The Tenth Circuit has also added an extra wrinkle to the case law above: in *United States v. Glass*, 128 F.3d 1398 (10th Cir. 1997), the Tenth Circuit held that *Bruton* applied even when a codefendant's statements were not "facially or directly inculpatory" if the fact revealed was critical to the prosecution's case. *Glass*, 128 F.3d at 1405.

In *Glass*, a jury convicted Katrice Lashawn Glass and Larry Burnett of crimes involving the distribution of cocaine. *See id.* at 1400. The prosecution in that case accused Mr. Burnett of aiding and abetting Ms. Glass in the crime, and, to make out its case, it needed to tie Mr. Burnett and Ms. Glass together. *See id.* at 1404. This was tricky because both Mr. Burnett and Ms. Glass had denied knowing one another during initial interviews with police. *See id.* Over objection, the government, through a detective's testimony, introduced two statements that Ms. Glass had made: (1) Ms. Glass had said that she and Mr. Burnett were "half-brother and half-sister," and (2) Ms. Glass named one Ruthy Maye Simmons as her grandmother, which is significant because Mr. Burnett also claimed that Ruthy Maye Simmons was his grandmother. *See id.* Although the statements were innocuous on their face and only inferentially inculpatory, the Tenth Circuit noted that the statements constituted "strong circumstantial evidence" that the defendants worked together, and such evidence was "critical and necessary" to the government's case. *See id.* Thus, the *Glass* Court found that the statements had been admitted in violation of *Bruton*. *See id.* at 1404–05.

Putting everything together, the Confrontation Clause applies only to testimonial statements offered for their truth against the defendant. In a joint trial, the confession of a codefendant may be admitted if there is a limiting instruction and all reference to even the existence of the other, non-confessing defendant is erased. Although later evidence combined with his codefendant's confession may still link the defendant in an incriminating way, there is no Confrontation Clause problem if the incriminating inference is not too obvious, vivid, or overwhelming to be cured by a limiting instruction. Lastly, the information elicited from the inferentially incriminating statement cannot be a critical part of the prosecution's case against the non-confessing defendant.

### III.     *Mr. Pavon-Rodriguez's Conception of the Confrontation Clause*

Mr. Pavon-Rodriguez disputes the picture of the law painted above. First, he contends that it is no longer the law that only statements offered for their truth are subject to the Confrontation Clause. (*See* Doc. 56 at 1.) To support his claim, he cites *Williams v. Illinois*, 567 U.S. 50 (2012) to say that five Justices had rejected the "not-for-truth" rationale. (*See* Doc. 56 at 1.) A closer look at *Williams*, however, reveals that Mr. Pavon-Rodriguez's argument is nothing more than a grab at fortuitous phrasing by the Justices.

*Williams* involved a young woman from Chicago, L.J., who was abducted and raped on her walk back from work. *See Williams*, 567 U.S. at 59. L.J. survived the attack and was treated at a nearby hospital, where doctors treated her wounds and took blood samples and vaginal swabs for a sexual-assault kit. *Id.* The vaginal swabs were later sent to Cellmark Diagnostics Laboratory in Germantown, Maryland, for DNA testing. *Id.* From the semen on the swabs, Cellmark produced a report that contained a male DNA profile. *Id.* Cellmark sent the report to the Illinois State Police (ISP) lab, where Sandra Lambatos, a forensic specialist, compared the

DNA profile from Cellmark's report to entries in the Illinois DNA database. *Id.* The computer showed a match to the DNA profile of the defendant, Sandy Williams. *Id.*

At trial, Ms. Lambatos testified as an expert in forensic biology and DNA analysis. *See id.* at 60. She testified that, after comparing the DNA profile produced by Cellmark from L.J.'s vaginal swabs to the DNA profile from Mr. Williams's blood, she concluded that the two profiles matched. *See id.* at 61. The Cellmark report itself was neither shown to the jury nor admitted into evidence. *Id.* at 62. Ms. Lambatos "did not quote or read from the report; nor did she identify it as the source of any of the opinions she expressed." *Id.* Mr. Williams objected on Confrontation Clause grounds, suggesting that he should have been able to confront the individual at Cellmark who prepared the report. *See id.* at 62–63.

Writing for a four-Justice plurality, Justice Alito concluded that there was no Confrontation Clause problem because the report had not been used for its truth, but merely to see whether it matched something else. *See id.* at 78. Justice Thomas, who concurred only in the judgment, rejected the plurality's argument that the report was not used for its truth. *See id.* at 104 (Thomas, J., concurring in the judgment). To Justice Thomas, "there is no meaningful distinction between disclosing an out-of-court statement so that the factfinder may evaluate the expert's opinion and disclosing that statement for its truth." *Id.* at 106. Writing for the four dissenting Justices, Justice Kagan rejected the idea that the Cellmark report had not been used for its truth: "when a witness, expert or otherwise, repeats an out-of-court statement as the basis for a conclusion . . . the statement's utility is then dependent on its truth." *See id.* at 126 (Kagan, J., dissenting). What is clear, then, is that the fight in *Williams* was about whether the not-for-truth exception applies, not whether the not-for-truth exception survives.[1]

---

[1] Justice Kagan wrote in her dissent that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Williams*, 567 U.S. at 125.

Second, Mr. Pavon-Rodriguez disagrees with the idea—established in *Richardson v. Marsh*—that certain inferentially-incriminating statements could be admitted in joint trials with a limiting instruction. (*See* Doc. 56 at 2–3.) He cites *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) for the proposition that the defendant has the right to confront a witness even if the testimony, taken alone, will not suffice to convict. (*Id.*) But *Melendez-Diaz* does not disturb *Richardson*: The same Justice (Justice Scalia) authored both *Melendez-Diaz* and *Richardson*, and he clarified that without a limiting instruction, even statements that only inferentially incriminate a defendant would need to be excluded under the Confrontation Clause. *See Melendez-Diaz*, 557 U.S. at 314 n.4. *With* a limiting instruction, however, certain inferentially incriminating statements *are* admissible. *See id.* (emphasis added).

Along this vein, Mr. Pavon-Rodriguez also suggested during the motion hearing that the Court should give less weight to *Richardson* and *Gray* because they pre-date *Crawford v. Washington*. But the Court can find no reason why *Crawford*, which limited the Confrontation Clause to testimonial statements and repudiated the *Ohio v. Roberts* indicia of reliability test, would abrogate *Richardson* or *Gray*, which dealt with the different question of the effectiveness of limiting instructions for codefendant confessions in joint trials. Additionally, *Crawford* was decided in 2004, but the Tenth Circuit in 2015 cited *Richardson* as binding precedent, *see Zar*, 790 F.3d at 1052, and the Supreme Court in 2009 cited *Gray* as binding precedent, *see Melendez-Diaz*, 557 U.S. at 314 n.4.

**APPLICATION**

*I.     Statements not offered for the truth.*

The government contends that Statements 1–4 and 8 will not be offered for their truth. Statements 1–4 (about stopping for a drink of water, traveling from Benson to Arizona, looking

13

for work in Rodeo, and not having contraband or anyone else in the car) are all instances where the government believes that Mr. Milne was not being truthful with Agent Defayette. The government also would not offer Statement 8 for its truth since the government is arguing that Mr. Milne knew (or should have known) what was in the bales. Accordingly, the Court accepts that Statements 1–4 and 8 could be offered for a purpose other than to establish the truth of the matter asserted. If the government does not offer these statements for their truth at trial, they will not be subject to the Confrontation Clause.

## II.     *Statements that do not directly incriminate.*

After culling statements not offered for their truth, the remaining statements at issue are Statements 5, 6, 7, and 9. Statement 5, where Mr. Milne tells the agents that he has no identification and provides the agents with his name and date of birth, is not facially incriminating towards Mr. Pavon-Rodriguez. Like the confession in *Richardson*, there is no reference to even the existence of Mr. Pavon-Rodriguez. Statement 5 also does not appear to elicit some fact that is critical to the prosecution's case against Mr. Pavon-Rodriguez. Accordingly, a limiting instruction telling the jury to consider Statement 5 only with regard to Mr. Milne's guilt would be effective in preventing prejudice to Mr. Pavon-Rodriguez, and the statement does not need to be excluded under *Bruton*.

Similarly, Statement 6, where Mr. Milne tells the agents that he will retrieve the temporary plate for them, is analogous to the confession in *Richardson*. Statement 6 does not even mention Mr. Pavon-Rodriguez's existence. At the very most, the statement could only be inferentially incriminating towards Mr. Pavon-Rodriguez, and any inferentially incriminating information would not be critical to the prosecution's case against Mr. Pavon-Rodriguez. A

limiting instruction would be effective in preventing prejudice to Mr. Pavon-Rodriguez, and the statement does not need to be excluded under *Bruton*.

As to Statement 7, where Mr. Milne tells agents that there are "bales" in the backpacks, the statement is analogous to the confession in *Richardson* because there is no reference to the existence of Mr. Pavon-Rodriguez. The problem with Statement 7, however, comes from the fact that Statement 7 could be used as circumstantial evidence to prove Mr. Pavon-Rodriguez's possession or knowledge of the marijuana: if the bales are in the car, and Mr. Pavon-Rodriguez is in the car, did Mr. Pavon-Rodriguez have control of the marijuana? Did he know about the marijuana? Since the government is accusing Mr. Pavon-Rodriguez of conspiracy to distribute marijuana and possession with intent to distribute marijuana, possession or knowledge of the marijuana in the car is critical to the government's case. The situation here calls to mind *United States v. Glass*, where the Tenth Circuit found that statements which were innocuous on their face and only inferentially inculpatory were nonetheless barred under *Bruton* because the statements constituted "strong circumstantial evidence" that was "critical and necessary" to the government's case. *See Glass*, 128 F.3d at 1404–05. The Court will exclude Statement 7 under *Glass* for revealing circumstantial evidence of an element critical to the government's case against Mr. Pavon-Rodriguez.

Finally, the Court turns to Statement 9, where Mr. Milne tells the agents that there is someone lying in the back seat. One could argue that this is only inferentially incriminating, since *Gray v. Maryland* said that prohibited inferences were those that, "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *See Gray*, 523 U.S. at 196. If Statement 9 were the very first item introduced

at trial, perhaps a jury would not know who was lying in the backseat. In that case, it may take more linking evidence to cause Statement 9 to become incriminating to Mr. Pavon-Rodriguez.

On the other hand, this resembles the situation in *Gray* (where the Court held that a limiting instruction was not enough) because Statement 9 obviously refers to the existence of Mr. Pavon-Rodriguez. In doing so, the statement already fails the Tenth Circuit's test in *United States v. Zar*. *See Zar*, 790 F.3d at 1052 (requiring the non-testifying codefendant's confession to eliminate any reference to the existence of the other codefendant). *Gray* also said that statements that were "more vivid than inferential incrimination, and hence more difficult to thrust out of mind," would be difficult to remedy with a limiting instruction and thus subject to *Bruton*. *See Gray*, 523 U.S. at 196. Statement 9 would almost certainly be admitted after some other evidence had already been admitted, and it would be easy for the jury to look over at the defense table and know immediately who the "someone" lying in the backseat was. The statement that he was lying in the backseat could create vivid imagery of Mr. Pavon-Rodriguez hiding, which connotes his guilt, and could be powerfully incriminating. Because Statement 9 references Mr. Pavon-Rodriguez in an obvious manner and has a high chance of creating vivid prejudice in the mind of the juror, a limiting instruction would not be effective, and Statement 9 is barred under *Bruton*.

### III. Co-Conspirator Statement

The government also argues that Statements 1–4 and 8 were made in furtherance of the charged criminal conspiracy, and are thus co-conspirator statements not subject to the Confrontation Clause. (*See* Doc. 59 at 5–8.) The Court does not need to reach this issue because the government has represented to the Court that Statements 1–4 and 8 will not be offered for their truth, and the Court has determined that Statements 1–4 and 8 will not violate the Confrontation Clause if they are not offered for their truth.

**CONCLUSION**

For the reasons provided above, the Court orders that:

(1) Mr. Pavon-Rodriguez's motion to sever the trial is denied.

(2) Statements 1–4 and 8 are admissible with no limiting instruction if they are not offered for the truth of the matter asserted.

(3) Statements 5 and 6 are admissible with a limiting instruction that the jury consider the statements only against Mr. Milne.

(4) Statements 7 and 9 must be excluded under *Bruton* unless Mr. Milne testifies at trial.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**