IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                          No. CR 17-1923 RB

JOHN LEROY MILNE and

MANUEL PAVON-RODRIGUEZ,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the government's motion for a ruling of admissibility on the offered testimony of DEA Special Agent Joseph Montoya, as well as Defendant Manuel Pavon-Rodriguez's motion to exclude or limit the testimony of Agent Montoya. After reviewing the facts, the legal standards, and the submissions of the parties, the Court will permit Agent Montoya to testify as an expert only about certain topics, enumerated below.

**FACTS**

On June 23, 2017, Border Patrol agents arrested Defendants John Leroy Milne and Manuel Pavon-Rodriguez. Mr. Milne had been driving a Ford Explorer (Explorer) containing several burlap backpacks filled with about 111.8 kilograms of marijuana. Mr. Pavon-Rodriguez, an undocumented alien, was hiding in the Explorer.

The government has charged Mr. Milne and Mr. Pavon-Rodriguez with conspiracy to distribute marijuana and possession with intent to distribute marijuana. (Doc. 13 at 1–2.) As part of its case, the government plans to call DEA Special Agent Joseph Montoya. (Doc. 46 at 1.) The

government contends that Agent Montoya's testimony is relevant and admissible under Federal Rule of Evidence 702, which allows opinion testimony by witnesses qualified as experts. (*Id.*)

> The following are Agent Montoya's relevant credentials, according to the government:
>
> Agent Montoya has been a DEA Special Agent since 1999, during which time he has specialized in investigations involving drug trafficking. Agent Montoya has received specialized training on the subject of drug trafficking from the DEA, and he has personally [been] involved [in] over 500 investigations involving the possession, manufacture, distribution, and importation of controlled substances . . . . Agent Montoya has also been involved in more than 2000 undercover operations as a transporter/courier, facilitator, seller, or purchaser of controlled substances.
> . . .
> Agent Montoya has approximately 15 years of field experience conducting physical surveillance, interviewing witnesses, including confidential sources and cooperating defendants, writing affidavits for and executing search warrants, working with undercover agents and informants, analyzing phone and financial records, and conducting wiretap investigations.
> . . .
> Through informant interviews of individuals involved in drug trafficking, through undercover operations, and through participation in drug trafficking investigations, Agent Montoya has learned about the manner in which individuals and organizations package, conceal, transport, and distribute controlled substances in New Mexico and throughout the United States, and the transportation of controlled substances. Agent Montoya also has become familiar with the appearance and street names of various drugs, including marijuana. He also knows the street value of marijuana and the difference between distributable quantities of marijuana and personal use quantities of marijuana.

(*Id.* at 1–2.) On the basis of this background, the United States plans to have Agent Montoya testify about his training and experience investigating drug trafficking cases, as well as:

> (1) the common ways in which drug distributors import narcotics from Mexico into the United States, and then transport and distribute the narcotics in New Mexico, and elsewhere; (2) the meaning of the word "bales," in reference to marijuana . . . (3) different roles within drug organizations, specifically focusing on couriers and backpackers; (4) that backpacks are "tools of the trade" for drug traffickers . . . (5) the common ways in which drug trafficking organizations export drugs from [] Mexico into the United States . . . (6) the monetary wholesale and street value of the marijuana seized in this case; and (7) that the amount and value of the marijuana seized in this case is consistent with the intent to distribute marijuana rather than personal use. Agent Montoya also will testify concerning the significance of various routes taken by the drug traffickers.

2

(Doc. 60 at 9.)

Mr. Pavon-Rodriguez objects to the proposed testimony by Agent Montoya and asks the Court limit or exclude Agent Montoya's testimony.

## LEGAL STANDARD

Federal Rule of Evidence 702 allows a witness who qualifies as an expert by virtue of his "knowledge, skill, experience, training, or education" to testify in the form of an opinion if (1) the witness's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is based on reliable principles and methods, and (4) the witness has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702.

The Supreme Court has tasked district courts with a gatekeeping function under Rule 702 to ensure that all "scientific testimony or evidence admitted" is both reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function not only applies to scientific testimony or evidence, but also to any testimony based on technical and other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In *Daubert*, the Supreme Court offered four factors to consider in determining whether expert testimony is sufficiently reliable: (1) whether the theory at issue is testable, (2) whether the theory has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory has been generally accepted by the relevant scientific community. *See Daubert*, 509 U.S. at 593–94. The four *Daubert* reliability factors are not exclusive, and the district court has broad discretion "to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co.*, 526 U.S. at 158. In certain circumstances, the *Daubert* reliability factors may be inapposite for assessing reliability,

"depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *See United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009). In those cases where the *Daubert* reliability factors are ill-fitting, the Court may certify witnesses as experts even if they fail to meet any of the four *Daubert* reliability factors, as long as the Court determines through other methods that the witness's testimony is sufficiently reliable. *See id.* In applying the above principles, the Tenth Circuit has "*routinely*" upheld the admission of expert testimony from law enforcement officers seeking to identify for the jury typical indicia of drug trafficking activity." *See United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009) (emphasis added).

As part of its gatekeeping function, the Court must also inspect expert testimony and evidence for relevancy. *See Daubert*, 509 U.S. at 589. To determine relevancy, the Court must ensure that the offered testimony will "help the trier of fact understand the evidence or determine a fact in issue." *See id.* at 591 (explaining that Rule 702's condition that the evidence or testimony "assist the trier of fact" goes primarily to relevance). In assessing whether evidence "helps the trier of fact," the Court may consider many factors, including whether the testimony is already "within the juror's common knowledge and experience," and "whether [the testimony] will usurp the juror's role of evaluating a witness's credibility." *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006).

## APPLICATION

### I. Reliability

Mr. Pavon-Rodriguez mentions that Agent Montoya's opinions do not satisfy the four *Daubert* reliability factors. (*See* Doc. 48 at 5.) But Mr. Pavon-Rodriguez concedes that the Tenth

Circuit "routinely allow[s] testimony by drug enforcement officers as to relevant indicia of drug trafficking activity." (*See id.* (citing *Lovern*, 590 F.3d at 1102).)

The Tenth Circuit has also previously rejected an argument similar to the one Mr. Pavon-Rodriguez advances. In *United States v. Garza*, the prosecution's expert, Officer Steven Sanders, testified about the connection between the defendant's gun and the drug trafficking crime for which the defendant was being accused. *See Garza*, 566 F.3d at 1197–98. The defendant there complained that Officer Sanders's testimony did not satisfy the four *Daubert* reliability factors. *See id.* at 1199. Noting that Officer Sanders could have acquired the requisite specialized knowledge through experience and training, the Tenth Circuit ruled against the defendant, saying that it was not essential that Officer Sanders's opinion be supported by the four *Daubert* reliability factors. *See id.*

Similarly, the government's proffered expert here would demonstrate his reliability not through the four *Daubert* reliability factors, but through proving that he acquired specialized knowledge from training and experience. And the government has offered ample proof of Agent Montoya's training and experience in his proposed field of testimony. In light of Agent Montoya's training and experience, and given the fact that Tenth Circuit courts have "*routinely* upheld the admission of expert testimony from law enforcement officers seeking to identify for the jury typical indicia of drug trafficking activity," *see Lovern*, 590 F.3d at 1102 (emphasis added), the Court finds that Agent Montoya's opinion would be reliable regarding the following topics proposed by the government:

- The process of bringing narcotics into the United States in which backpackers carry drugs to a destination for pickup by couriers.
- The role of backpackers and couriers within a drug organization.

- That backpacks are "tools of the trade" for drug traffickers.

- How illegal narcotics are typically packaged.

- The amount and value of the drugs seized.

- The routes chosen for drug smuggling and why those routes are chosen—focusing on Highway 80.

On the other hand, the Court is skeptical that Agent Montoya's training or experience could give him specialized knowledge about the meaning of the word "bales." During the hearing on this issue, the Court voiced its doubt about Agent Montoya's ability to base his opinion about the meaning of the word "bales" on a sufficiently large sample size of prior experiences. In response, the government declined to defend Agent Montoya's expertise concerning the meaning of the word "bales." Consequently, the Court finds that Agent Montoya's opinion as to the meaning of the word "bales" is unreliable, and the government may not introduce such testimony.

## II. <u>Relevance</u>

As part of its gatekeeper role, the Court must also assess whether proposed expert testimony would be relevant.

- *Testimony about the process of bringing narcotics into the United States in which backpackers carry drugs to a destination for pickup by couriers, and*
- *Testimony about the role of backpackers and couriers within a drug organization, and*
- *Testimony about the routes chosen for drug smuggling and why those routes are chosen—focusing on Highway 80.*

Mr. Pavon-Rodriguez claims the proposed testimony above is irrelevant because it does not help the jury decide the critical issue of whether he is a smuggler. (Doc. 48 at 7–8.) But Mr. Pavon-Rodriguez seems to hold the mistaken belief that only direct evidence can prove guilt. Testimony regarding the route that drug smugglers commonly take could bear on Mr. Pavon-

Rodriguez's intent to transport drugs: that Mr. Pavon-Rodriguez was traveling on a path commonly taken by drug smugglers is circumstantial evidence that Mr. Pavon-Rodriguez is a drug smuggler. Additionally, testimony regarding the process by which drugs are brought into the United States and the roles that backpackers and couriers play in such a scheme is relevant because it could provide the jury with the background necessary to infer that Mr. Pavon-Rodriguez was not involved by accident. The proposed testimony above could certainly assist the jury in determining contested issues or understanding the evidence.

- *Testimony that backpacks are tools of the trade for drug traffickers.*

Mr. Pavon-Rodriguez argues that the fact that drug smugglers use backpacks to carry marijuana is self-evident and uncontroverted. He says what matters is whether *he* carried one of those backpacks. But absent a stipulation, the fact that drug smugglers use backpacks to carry marijuana is something the government must prove, no matter how obvious it may seem to Mr. Pavon-Rodriguez. And, as the government points out, "[t]he knowledge that marijuana smugglers use 'backpackers' (people walking through the desert carrying homemade backpacks filled with marijuana into the United States) is not so widespread among the general public as to preclude expert testimony regarding backpacks and backpackers." (Doc. 60 at 6–7.) The Tenth Circuit has explained that the "average juror is often innocent of the ways of the criminal underworld," *see United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014), so the proposed testimony could provide the jury with necessary background information.

Furthermore, testimony that marijuana smugglers often use homemade backpacks like the ones found can also help the jury determine the issue of whether Mr. Pavon-Rodriguez is a smuggler: if the jury infers from the testimony that the backpacks were for smuggling drugs, then the jury could reasonably infer from the fact that the backpacks were found with Mr. Pavon-

7

Rodriguez that Mr. Pavon-Rodriguez was smuggling drugs. This probative inference is unchanged by the fact that Mr. Pavon-Rodriguez does not dispute the backpacks' intended use.

- *Testimony about how illegal narcotics are typically packaged.*

Mr. Pavon-Rodriguez argues that introduction of expert testimony into how smugglers wrap marijuana is unfairly prejudicial evidence of guilt by association: drug smugglers from Mexico always wrap marijuana; the marijuana here was wrapped; the defendant is from Mexico; therefore the defendant wrapped the marijuana. (*See* Doc. 48 at 6.)

But the government is only trying to show that the marijuana was packaged for smuggling. The guilty association here is not between Mr. Pavon-Rodriguez and Mexico, but rather Mr. Pavon-Rodriguez and the packaged marijuana. That association is circumstantial evidence that could help a juror infer that Mr. Pavon-Rodriguez was involved in smuggling marijuana.

- *Testimony about the amount and value of the drugs seized.*

Arguing that "even a blind man can see that hundreds of pounds are for distribution, not personal use," Mr. Pavon-Rodriguez objects to the testimony regarding the amount of marijuana seized. (Doc. 48 at 6–7.) According to Mr. Pavon-Rodriguez, what is in dispute is not whether the marijuana was for distribution, but whether *he* intended to distribute the marijuana. Similarly, Mr. Pavon-Rodriguez argues that the value of the marijuana is irrelevant, and that "illogical is any inference that, because marijuana is expensive, the smugglers would not have allowed undocumented aliens to carry a backpack." (*Id.* at 7.) He also adds that it is prejudicial to think that because marijuana is expensive, he must be guilty as a principle or accessory. (*Id.*)

Mr. Pavon-Rodriguez does not need to worry about inferences that because marijuana is expensive, the smugglers would not allow undocumented aliens to carry a backpack—the

government is actually trying to elicit the opposite inference: because the marijuana is expensive, the smugglers would only have allowed people involved in the operation to come into contact with the drugs. This implies that Mr. Pavon-Rodriguez, an undocumented alien, knew about the drugs and was a part of the smuggling operation. And the government does not appear to be arguing that because marijuana is expensive, then Mr. Pavon-Rodriguez must be guilty as a principle or accessory.

Instead, the government's proposed testimony regarding the weight and value is relevant because it shows that the marijuana was meant to be distributed and that Mr. Pavon-Rodriguez had knowledge of the presence of drugs. Again, absent a stipulation, the government still must prove to the jury that the marijuana was for distribution, not personal use. The government may elect to meet its burden of proof by showing that the amount and value of marijuana is consistent with distribution. Additionally, "the Tenth Circuit has recognized that the value of drugs is relevant to the issue of a defendant's knowledge of the presence of the drugs within the vehicle when the defendant claims to be unaware of the presence of drugs." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999). Since Mr. Pavon-Rodriguez has denied knowing about the marijuana in the Explorer, (*see* Doc. 48, Ex. 6), the value of the drugs can help the jury to decide a disputed issue.

### III. Final Inferences

Mr. Pavon-Rodriguez also asks the Court to prevent Agent Montoya from providing the final inferential step characterizing the role that he may have played in any crime. (Doc. 48 at 8.) The Court will grant Mr. Pavon-Rodriguez's request here. As part of its assessment of whether testimony will "help a trier of fact," the Court may consider whether the testimony is already "within the juror's common knowledge and experience." *See Rodriguez-Felix*, 450 F.3d at 1123.

9

An expert's job is to "help the trier of fact understand the evidence or determine a fact in issue," Fed. R. Evid. 702, not to determine the facts in issue for the jury. It would be inappropriate for an expert, knighted with the imprimatur of an expert by the Court, to give an opinion for the jury when the jury could form the opinion based on the evidence and the jury's common knowledge and experience. To allow Agent Montoya to make the final inferential step for the jury in those cases would be to allow him to improperly usurp the jury's role. *See United States v. Brown*, 776 F.2d 397, 401 (2nd Cir. 1985) ("there is something rather offensive in allowing an investigating officer to testify not simply that a certain pattern of conduct is often found in narcotics cases, leaving it for the jury to determine whether the defendant's conduct fits the pattern, but also that such conduct fitted the pattern."); *see also United States v. Diaz*, 878 F.2d 608, 617 (2nd Cir. 1989) (expressing "concern about allowing expert witnesses to provide outright characterizations of the role of individual defendants in narcotics transactions.").

In this case, after Agent Montoya lays the foundation with his testimony, a jury would have the requisite knowledge and experience to interpret the evidence and make any necessary inferences. Agent Montoya may not take the final inferential step for the jury. For example, although Agent Montoya may testify that the packaging of the marijuana was consistent with marijuana that was intended to be distributed, Agent Montoya may not then opine that Mr. Pavon-Rodriguez was going to distribute the marijuana. The jury has the common knowledge and experience to take that inferential step itself, if it wishes. As another example, although Agent Montoya may testify about the value of the marijuana since the value is relevant to whether Mr. Pavon-Rodriguez knew about the presence of the marijuana, Agent Montoya may not then make the inferential step for the jury and conclude that, because of the value of the

drugs, Mr. Pavon-Rodriguez knew about the drugs. The jury has the ability to make that inference itself, if it wishes.

## CONCLUSION

For the reasons provided above, the Court rules that DEA Special Agent Joseph Montoya may testify as an expert under Rule 702 regarding the following:

- The process of bringing narcotics into the United States in which backpackers carry drugs to a destination for pickup by couriers.

- The role of backpackers and couriers within a drug organization.

- That backpacks are "tools of the trade" for drug traffickers.

- How illegal narcotics are typically packaged.

- The amount and value of the drugs seized.

- The routes chosen for drug smuggling and why those routes are chosen—focusing on Highway 80.

After providing the above testimony, Agent Montoya may not take the inferential step characterizing a defendant's role or making an ultimate conclusion for the jury. In this case, the jury has the requisite common knowledge and experience to make the final inferences itself, and Agent Montoya's job is simply to "help the trier of fact understand the evidence or determine a fact in issue," not to determine the facts in issue for the jury.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**